**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

---

**ARCH SPECIALTY INSURANCE COMPANY
as subrogee of WISCONSIN CHEESE GROUP, LLC**
Harborside 3
210 Hudson Street, Suite 600
Jersey City, NJ 07311-1107

and

**BRIDGEWAY INSURANCE COMPANY as
subrogee of WISCONSIN CHEESE GROUP, LLC**
555 College Road East
Princeton, NJ 08543

                Plaintiffs,

    v.

**CHRISTIAN BROTHERS TRANSIT, LLC**
412 Acadia Lane
Forney, Texas 75126

                Defendant.

---

## COMPLAINT

---

Plaintiffs Arch Specialty Insurance Company and Bridgeway Insurance Company as subrogees of Wisconsin Cheese Group, LLC., by and through their attorneys, Nielsen, Zehe & Antas, P.C., and for their complaint against Defendant Christian Brothers Transit, LLC, hereby complain as follows:

### PARTIES, JURISDICTION & VENUE

1. Plaintiff Arch Specialty Insurance Company (hereinafter, "Arch") is a Missouri corporation with its principal place of business at Harborside 3, 210 Hudson Street, Suite 600,

Jersey City, NJ 07311-1107. At all relevant times, Arch was authorized to and did in fact issue policies of insurance to insure property and businesses in the State of Wisconsin, including the Subject Policy.

2.	Bridgeway Insurance Company (hereinafter, "Bridgeway") is a Delaware corporation with its principal place of business at 555 College Road East, Princeton, New Jersey 08543. At all relevant times, Bridgeway was authorized to and did in fact issue policies of insurance to insure property and businesses in the State of Wisconsin including the Subject Policy.

3.	Wisconsin Cheese Group, LLC (hereinafter, "WCG") is a Wisconsin limited liability company with a principal place of business located at 105 3rd Street, Monroe, WI 53566. WCG engages in the business of making, processing, cutting, sorting, packaging, and labeling cheese for distribution throughout the continental United States.

4.	WCG is an additional insured under a market policy under which Arch and Bridgeway share the loss as the primary layer of insurance. (hereinafter, "Subject Policy"). Their respective policy numbers are as follows: Arch, ESP1009330-02; and Bridgeway, 7EA7PP1001014-03.

5.	Upon information and belief, Christian Brothers Transit, LLC (hereinafter, "Christian Brothers") is a Texas corporation with a principal place of business located at 412 Acadia Lane, Forney, Texas 75126.

6.	Christian Brothers is engaged in the business of interstate freight carriage for hire.

7.	The Court has jurisdiction over this complaint. Pursuant to the Carmack Amendment, 49 U.S.C. § 14706(d)(1), which states that: "Against delivering carrier. – A civil action under this section may be brought against a delivering carrier in a district court of the United States or in a State court. Trial, if the action is brought in a district court of the United States *is in*

*a judicial district*, and if in a State Court, is in a State *through which the defendant carrier operates*." 49 U.S.C. § 14706(d)(1) (emphasis added)

8.      Christian Brothers, upon information and belief, was the sole carrier of the lost cargo this lawsuit concerns and was thus the delivering carrier.  Furthermore, Christian Brothers operates in Wisconsin as they picked up the lost cargo this suit concerns from WCG's place of business in Green County, Wisconsin. Thus, jurisdiction is proper in the United States District Court for the Western District of Wisconsin as this court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, including the Carmack Amendment, 49 U.S.C. §14706

9.      Venue is appropriate for this complaint because Christian Brothers transported goods through and they were picked up from WCG in Green County Wisconsin, which is at 105 3rd St, Monroe, Wisconsin 53566, thus venue is proper under both 49 U.S.C § 14706 and 28 U.S.C. § 1391 as the location of the point of origin, which is where substantial part of the events giving rise to the claims, the pickup of the cargo, occurred, took place in the Western District of Wisconsin.

## FACTUAL BACKGROUND

### I.      The Rejected Shipment

10.     On or around July 2, 2024, July 11, 2024, and July 15, 2024, WCG hired Christian Brothers to handle an over-the-road delivery of a load of cheeses (hereinafter, the "Shipment") from Wisconsin Cheese's facility in Monroe, Wisconsin, to WCG's customer, H.E. Butt Grocery Company (hereinafter, "HEB") in San Antonio, Texas.

11.     Christian Brothers issued three Bills of Lading to WCG for the Shipment dated July 2, 2024, July, 11, 2024, and July 15, 2024, respectively.

12.     The Bills of Lading stated that the shipments "MUST MAINTAIN 35° - 40° TEMP. AT ALL TIMES". The Bills of Lading were signed by a Christian Brothers employee. True and correct copies of the July 2, 2024, July 11, 2024, and July 15, 2024 Bills of Lading are attached hereto as Exhibit A.

13.     Christian Brothers picked up and loaded the Shipment on July 26, 2024.

14.     On July 29, 2024, upon arrival of the Shipment at its ultimate destination, HEB inspected the cheese in the Shipment.

15.     Upon reviewing the temperature records for the ambient temperature near the shipment in trailer in which Christian Brothers transported the Shipment, HEB discovered that the temperature of the refrigerated unit reached temperatures in excess of 55 degrees Fahrenheit at the high extreme, exceeding the 40 degrees Fahrenheit maximum set forth in the Bills of Lading. Additionally, the temperature of the refrigerated unit exceeded 40 degrees for a combined total of 2 days and 15 hours of travel, with the temperatures exceeding 40 degrees for nearly that entire time. Thus, HEB rejected the Shipment. A true and correct copy of the shipment temperature data is attached hereto as Exhibit B.

16.     HEB rejected the Shipment because Christian Brothers failed to ensure that the Shipment was maintained within the 35-to-40-degree Fahrenheit temperature range, as required by the Bills of Lading.

17.     The Shipment was returned to WCG as unusable for its intended use as it was transported above the temperature requirements of the Bills of Lading.

18.      As result of the failure to keep the cheese below 40 degrees Fahrenheit, $76,057.76 in cheese was rendered unsafe for consumption and unusable for its intended use. True and correct copies of the cheese invoices are attached hereto as Exhibit C.

19.    As a result of the loss Arch & Bridgeway each made payments of $25,528.88 to WCG, their insured, in addition there was a deductible of $25,000 for the loss, making the total loss $76,057.76.

20.    As a result of the payments made by Arch and Bridgeway, they are subrogated to the loss for a total of $51,057.76 plus the additional $25,000 deductible they seek to recover on behalf of their insured as part of the total loss of $76,057.76.

## COUNT I: CARRIER LIABILITY UNDER THE CARMACK AMENDMENT, 49 U.S.C. § 14701 et seq.

21.    Plaintiffs re-allege the Paragraphs above as if fully set forth herein.

22.    WCG is an individual shipper as defined by the Carmack Amendment, 49 U.S.C. § 14701 et seq.

23.    Christian Brothers is a carrier as defined by the Carmack Amendment, 49 U.S.C. § 14701 et seq.

24.    WCG delivered the Shipment to Christian Brothers in good condition.

25.    The Shipment was determined to be damaged when it arrived at its destination, WCG's customer HEB in San Antonio, Texas.

26.    The Shipment was damaged because Christian Brothers failed to keep the trailers containing the Shipment within the temperature range required by the July 2, 2024, July 11, 2024, and July 15, 2024, Bills of Lading.

27.    As a result of the damage, HEB rejected the Shipment for the reason that the cheeses in the shipment were above the required temperature and/or because the cheese in the Shipment spent significant time above the required temperature during transport.

28.    Following the rejection of the shipment, the contents of the Shipment were returned to WCG as unusable for their intended use, thus causing WCG damage.

5

29.     As result of the failure to keep the cheese below 40 degrees Fahrenheit, $76,057.76 in cheese was rendered unsafe for consumption and unusable for its intended use.

30.     As a result of the loss Arch & Bridgeway each made payments of $25,528.88 to WCG, their insured, in addition there was a deductible of $25,000 for the loss, making the total loss $76,057.76.

31.     As a result of the payments made by Arch and Bridgeway, they are subrogated to the loss for a total of $51,057.76 plus the additional $25,000 deductible they seek to recover on behalf of their insured as part of the total loss of $76,057.76.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Arch and Bridgeway demand judgment against Christian Brothers and respectfully request the Court issue an Order:

1.)     Awarding Arch and Bridgeway in an amount equaling $76,057.76;

2.)     Awarding Arch and Bridgeway reasonable costs and attorney fees in this matter;

3.)     Granting trial by jury; and

4.)     Any other relief as is deemed equitable and appropriate by this Court.

Dated: June 26, 2026                                NIELSEN, ZEHE & ANTAS, P.C.

By:     _____
        Eric J. Meli
        55 W. Monroe Street, Suite 1800
        Chicago, Illinois 60603
        (312) 635-1830 – Phone
        emeli@nzalaw.com
        enielsen@nzalaw.com
        ***Attorneys for Plaintiffs***

6